**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-2148**

KENNETH DEAL,

Plaintiff - Appellant,

v.

CITY OF MONROE, a North Carolina municipal corporation,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, Senior District Judge.  (3:24-cv-00845-FDW-DCK)

Argued:  May 8, 2026                                             Decided:  July 8, 2026

Before WILKINSON, NIEMEYER, and BENJAMIN, Circuit Judges.

Affirmed by published opinion.  Judge Benjamin wrote the opinion in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:**  Bo Caudill, VILLMER CAUDILL, PLLC, Charlotte, North Carolina, for Appellant.  Steven Andrew Bader, CRANFILL SUMNER, LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Sophia M. Pappalardo, VILLMER CAUDILL, PLLC, Charlotte, North Carolina, for Appellant.  Patrick Flanagan, Samantha M. Owens, CRANFILL SUMNER LLP, Charlotte, North Carolina, for Appellee.

DEANDREA GIST BENJAMIN, Circuit Judge:

Kenneth Deal served one full term as a member of the City of Monroe, North Carolina's board of adjustment. During his second term, he was removed by vote of the City Council. Deal sued, alleging his procedural due process rights were violated because he was deprived of his board seat without notice and an opportunity to be heard. The district court granted summary judgment for the City of Monroe, finding that Deal lacked a constitutionally protected property interest in his board seat.

Deal now appeals, arguing that the district court erred in concluding that he lacked a constitutionally protected property interest in his board seat. For the following reasons, we disagree with Deal and affirm the judgment of the district court.

I.

In December 2020, Kenneth Deal, a resident of Monroe, North Carolina, applied for and was appointed to the City of Monroe's (the "City") board of adjustment ("BOA"). The BOA is "a quasi-judicial body responsible for the disposition of applications for special use permits or variances and appeals from municipal administrative bodies, including City Code Enforcement." J.A. 60.[1] The BOA is constituted at the City's discretion pursuant to the following statute:

> A local government may by ordinance provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three-year terms. In appointing the original members or in the filling of vacancies caused by the expiration of the terms

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

2

of existing members, the governing board may appoint certain members for less than three years so that the terms of all members shall not expire at the same time.

N.C. GEN. STAT. § 160D-302(a) (2020).

BOA members may serve only two consecutive three-year terms and members receive between $50-$75 per meeting. MONROE, NORTH CAROLINA, CODE OF ORDINANCES § 32.071(A)(2), (B) (2022). When Deal was appointed to the BOA, his appointment was subject to the city code providing that "all [board] members serve at the pleasure of City Council and may be removed at any time with or without cause at the discretion of City Council." J.A. 35.

In December 2023, Deal was reappointed to a second term on the BOA. In August 2024, Monroe's City Council conducted a regular meeting. At that meeting, a councilmember moved to remove Deal from the BOA without explanation. Deal was not in attendance at the meeting, nor had he been notified that his membership on the BOA was up for discussion. Five councilmembers voted in favor of removing Deal, while two councilmembers voted against his removal. That vote resulted in Deal's removal from the BOA.

Deal then sued the City alleging his procedural due process rights had been violated. He sought relief under 42 U.S.C. § 1983 and a declaratory judgment to void City Council's removal of him. Deal moved for partial summary judgment as to the City's liability but still sought a trial for damages. The City moved for summary judgment on all of Deal's claims.

3

The district court granted summary judgment for the City on all of Deal's claims. It declined to find that Deal had a constitutionally protected property interest in his seat on the BOA because no binding caselaw established such a right. The district court found it unnecessary to determine whether the due process requirements were constitutionally inadequate because Deal had no property interest in his seat.

Deal now appeals, arguing that the district court erred in finding he did not have a constitutionally protected property interest in his seat. He further asserts that the City deprived him of his seat without due process. We disagree and affirm the judgment of the district court.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review a district court's grant of summary judgment de novo. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

III.

The Fourteenth Amendment's due process clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. A § 1983 procedural due process claim requires Deal to show that (1) he had "a cognizable liberty or property interest" in his seat on the BOA, (2) that he was "depriv[ed]

4

of that interest by some form of state action[,]" and (3) "that the procedures employed were constitutionally inadequate." *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011) (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)).

The parties do not dispute any material facts, so the only questions before us are: (a) whether Deal had a constitutionally protected property interest in his seat on the BOA and (b) if Deal had such an interest, whether he was deprived of that interest without constitutionally adequate procedures.

a.

To have a property interest in a specific benefit, Deal "must have more than an abstract need or desire for it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). His "unilateral expectation" of a benefit is not enough, instead, he must "have a legitimate claim of entitlement to it." *Id.* The Fourteenth Amendment does not create specific property interests but "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.*

b.

Neither the Supreme Court, our circuit, nor the Supreme Court of North Carolina have opined on the precise question of whether municipal board members have a claim of entitlement to their seats. In analogous circumstances, both our circuit and the North Carolina Court of Appeals have emphasized the role of municipal discretion in determining whether a plaintiff has a legitimate claim of entitlement to a benefit. When a local agency

5

has any level of discretion over a benefit, a plaintiff's claim to that benefit is not one of legitimate entitlement, but merely a unilateral expectation.

In *Gardner v. City of Baltimore Mayor & City Council*, we held that a building permit applicant only has a legitimate claim of entitlement to that permit where "the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval." 969 F.2d 63, 68 (4th Cir. 1992); *see also Clift v. Ware*, 1998 WL 883490, at *2 (4th Cir. Dec. 18, 1998) (same). There, plaintiffs argued that the City of Baltimore improperly inhibited their ability to obtain appropriate building permits and approvals for a residential development by failing to issue a public works agreement. *Id.* at 66–68. Though the plaintiffs' claims were substantive due process claims, the court had to first determine whether the plaintiffs had a constitutionally protected property interest in the relevant public works agreement. The court held that "any significant discretion conferred upon [a] local agency defeats the claim of a property interest." *Id.* at 68. Accordingly, it determined that because the City of Baltimore "reserved the right" to accept or reject building applications as it saw fit and to make and enforce additional requirements, plaintiffs had no cognizable property interest in the public works agreement. *Id.* at 69–70. Even if all were to expect "that the probability of issuance was extremely high," the court determined that "the opportunity of the local agency to deny issuance suffices to defeat the existence of [a] federally protected property interest." *Id.* at 68. The court acknowledged that "this standard appropriately balances the need for local autonomy in a matter of paramount local concern with recognition of constitutional protection at the very outer margins of municipal behavior." *Id.* at 69.

6

Similarly, in *Clayton v. Branson*, the North Carolina Court of Appeals determined that "a party cannot have a right or entitlement to a benefit whose dispensation rests entirely in the discretion of the city."  613 S.E.2d 259, 270 (N.C. Ct. App. 2005).  Instead, there must be "some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit."  *Id.* (citing *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409–10 (6th Cir. 2002)).

Though neither case precisely addresses one's claim of entitlement to a municipal board seat, their holdings can be applied to this case.  A building permit is certainly different from a municipal board seat but the balance we struck in *Gardner* persists between both circumstances.  Where a local government has discretion to provide or withhold a certain benefit, a plaintiff cannot force the local government to provide that benefit by claiming a property interest based on it being conferred previously.  *See Gardner*, 969 F.2d at 69 ("[T]his standard appropriately balances the need for local autonomy in a matter of paramount local concern with recognition of constitutional protection at the very outer margins of municipal behavior.").  Because the City here maintains discretion over whether to create or abolish their board of adjustment, appoint members to those boards, and to determine the selection and compensation process of board of adjustment members, we conclude that Deal had no cognizable property interest in his seat on the BOA.

Similar to the City of Baltimore in *Gardner*, the City maintains broad discretion over its BOA.  The City was authorized to constitute the BOA pursuant to North Carolina law.  N.C. GEN. STAT § 160D-302(a) (2020).  But it is also afforded the discretion to

7

abolish the BOA at any point. *See Board of Adjustment of Town of Swansboro*, 432 S.E.2d 310, 313–14 (N.C. 1993). And like applications for a building permit, the City created an application process under which Deal applied to serve on the BOA. And the City reviewed that application and subjectively determined Deal should be appointed to serve on the BOA. The City determined board members would be compensated $50-$75 per meeting. MONROE, NORTH CAROLINA, CODE OF ORDINANCES § 32.071(A)(2), (B) (2022). And much like in *Gardner* where the City of Baltimore had the discretion to reject final building permit applications, 969 F.2d at 69–70, here, the City was permitted to revoke Deal's appointment at any point. *See* J.A. 35 ("[A]ll [board] members serve at the pleasure of City Council and may be removed at any time with or without cause at the discretion of City Council."); MONROE, NORTH CAROLINA, CODE OF ORDINANCES § 32.201(E) (2023). Thus, there is no "policy, law, or mutually explicit understanding that both confers" Deal's seat on the BOA and "limits the discretion of the City to rescind" his seat. *Clayton*, 613 S.E.2d at 270.

At bottom, because the City has wide discretion to create, abolish, and determine the selection process for the BOA. The City certainly cannot be said to lack *all* discretion to deny Deal his seat. *See Gardner*, 969 F.2d at 68 (holding that consideration of municipal discretion "focuses on the amount of discretion accorded the issuing agency by law, not on whether or to what degree that discretion is actually exercised"). And thus, we hold that discretion to mean that Deal lacks a constitutionally protected property interest in his board seat.

c.

Deal contends that two North Carolina cases permit his alleged claim of entitlement to serve his entire term on the BOA.  He argues that *Board of Adjustment of Town of Swansboro v. Town of Swansboro*, 432 S.E.2d 310 (N.C. 1993), and *Frank v. Savage*, 695 S.E.2d 509 (N.C. Ct. App. 2010), limit the authority of local governments to reduce one's term in their municipal board seat, and therefore support his argument that he had a legitimate claim of entitlement to his board seat.  We disagree.  Neither case holds that individuals appointed to local boards of adjustment have a constitutionally protected property interest in their board seat.

In *Swansboro*, the three plaintiffs were members of the Town of Swansboro's board of adjustment.  432 S.E.2d at 311.  Their terms were terminated when the town abolished the Board of Adjustment; the town later reconstituted the Board of Adjustment with entirely new members.  *Id.* at 312.  There, plaintiffs argued that by abolishing the board, their three-year terms were shortened in violation of a state law requiring all board members to serve for three years.  *Id.* at 313.  The Supreme Court of North Carolina held that the terms of board of adjustment members may not be reduced while the board is in existence.  *Id.*  However, the court also determined the town was acting within its statutory authority when abolishing the board and thus the shortening of those members' terms did not diminish the town's authority to abolish the board.  *Id.* at 313–14.

Deal takes *Swansboro* to mean that § 160-302's specification of a three-year term for board members creates a legitimate claim of entitlement to his three-year term; therefore, his term may not be reduced.  But in no way does *Swansboro*'s holding that a

9

board of adjustment member's three-year term "may not be reduced by the Board of Commissioners as long as that Board of Adjustment is in existence" mandate that Deal had a constitutionally protected property interest in his three-year term. *Swansboro*, 432 S.E.2d at 313. The question of whether one has a property interest in a municipal benefit bears on the level of discretion a municipality has. *See Gardner*, 969 F.2d at 68; *see also Clift*, 1998 WL 883490, at *2. *Swansboro*'s holding ultimately relied on the town's *discretion* to create or abolish its board of adjustment, and the City's discretion here is not in question. Deal may have had an expectation he would hold his board seat for his entire term, but because the City otherwise had discretion to abolish or reconstitute the BOA pursuant to *Swansboro*, that "unilateral expectation" is not enough for Deal to have a legitimate claim of entitlement to his seat. *Bd. of Regents of State Colleges*, 408 U.S. at 577.

In *Frank*, plaintiffs sued after their appointments to the Yancey County Department of Social Services Board of Directors were revoked. 695 S.E.2d at 510. The newly elected Board of Yancey County Commissioners (the equivalent of a county council) revoked plaintiffs' appointments and reappointed new department of social services directors about three weeks after plaintiffs were originally sworn in. *Id.* The North Carolina Court of Appeals held that plaintiffs had a cognizable claim that the board of commissioners had violated North Carolina law. *Id.* at 514. It determined that *Swansboro*'s holding "depended on the Board of Commissioner's power to dissolve an administrative board, the establishment of which was not required by law." *Id.* at 513–14. "The corollary to that principle is that when the establishment of the administrative board is required by law, the Board of Commissioners lacks the authority to abolish said board, in whole or in part." *Id.*

10

at 514.  Thus, the court held that because the Department of Social Services Board of Directors' existence was mandated by law, unlike the board of adjustment in *Swansboro*, plaintiffs could proceed on their claims.  *Id.* at 513 (quoting N.C. GEN. STAT. § 153A-76(4) (2009)) (indicating that the board of commissioners "may not change the composition or manner of selection of . . . the board of social services").  However, like *Swansboro*, *Frank* does not require that we hold individuals have a constitutionally protected property interest in their seats on local boards of adjustment.

Deal equates the mandated board of social services in *Frank* with § 160-302's specification of a three-year term for board of adjustment members and argues that he similarly has a cognizable claim for his seat on the BOA.  But the circumstances of *Frank* are different from this case.  The Department of Social Services Board of Directors in *Frank* was mandated by state law.  *See* N.C. GEN. STAT. § 108A-1 ("Every county *shall* have a board of social services" (emphasis added)).  So, the county in *Frank* had no discretion whether to have a board of social services, nor did it have discretion to change the composition or manner of selection of the Department of Social Services Board of Directors.  *See* N.C. GEN. STAT. § 153A-76 ("The board [of commissioners] may not change the composition or manner of selection of a local board of education, the board of health, the board of social services, the board of elections, or the board of alcoholic beverage control.").  Here, the City is not required to have a board of adjustment.  Instead, the City "*may* by ordinance provide for the appointment and compensation of a board of adjustment consisting of five or more members, each to be appointed for three-year terms." N.C. GEN. STAT. § 160D-302(a) (emphasis added).  Whether a constitutionally protected

11

property interest exists centers on whether the City had discretion over the BOA. And unlike the board of commissioners in *Frank*, the City maintained an abundance of discretion over the selection, appointment, and compensation of the BOA.

We disagree with Deal. As just discussed, neither *Swansboro* nor *Frank* creates a property interest in a local board of adjustment seat or requires us to reach that holding. The discretion afforded to the City is dispositive here. As such, we need not rely on either case in our decision today.

Because Deal has failed to allege that he had a constitutionally protected property interest in his seat on the BOA, we need not reach whether he was deprived of his seat without constitutionally adequate procedures.

IV.

Thus, the City Council's removal of Deal stands. The district court's judgment is

*AFFIRMED*.

12